**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 14-1048**

———————————

GLADYS GARDNER, Individually and on Behalf of All Persons
Similarly Situated,

       Plaintiff - Appellant,

   v.

GMAC, INC., now known as Ally Financial Incorporated,

       Defendant and Third-Party Plaintiff – Appellee,

   v.

MANHEIM REMARKETING, INC.,

       Third-Party Defendant.

———————————

**No. 14-1049**

———————————

RANDOLPH SCOTT, Individually and on Behalf of All Persons
Similarly Situated,

       Plaintiff - Appellant,

   v.

NUVELL FINANCIAL SERVICES, LLC; NUVELL NATIONAL AUTO
FINANCE, LLC, d/b/a Nuvell National Auto Finance,

       Defendants and Third-Party Plaintiffs – Appellees,

   v.

MANHEIM REMARKETING, INC.,

       Third-Party Defendant.

—————————

Appeals from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:10-cv-01094-JFM; 1:09-cv-03110-JFM)

—————————

Argued: May 12, 2015                 Decided: August 6, 2015

—————————

Before NIEMEYER, KEENAN, and DIAZ, Circuit Judges.

—————————

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

—————————

**ARGUED**: Benjamin Howard Carney, GORDON, WOLF & CARNEY CHTD., Towson, Maryland, for Appellants. Martin C. Bryce, Jr., BALLARD SPAHR LLP, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF**: Martin E. Wolf, GORDON, WOLF & CARNEY CHTD., Towson, Maryland; Mark H. Steinbach, Washington, D.C.; John J. Roddy, Elizabeth A. Ryan, BAILEY & GLASSER, LLP, Boston, Massachusetts, for Appellants. Robert A. Scott, Glenn A. Cline, BALLARD SPAHR LLP, Baltimore, Maryland, for Appellees.

—————————

DIAZ, Circuit Judge:

The main question raised by this appeal is when borrowers may seek a remedy after their creditors violate the repossession notice requirements in Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law § 12-1001 et seq. Because we conclude that CLEC requires borrowers to have repaid more than the original principal amount of their loans before they are entitled to relief, we affirm.

I.

Gladys Gardner and Randolph Scott each entered into a retail installment sale contract with GMAC, Inc.--now Ally Financial, Inc.--or its subsidiary, respectively, to finance the purchase of a car. Both contracts were forms drafted by GMAC that designated CLEC as the applicable law. Relevant to this appeal, CLEC establishes rules, including notice requirements, for creditors that repossess "tangible personal property securing a loan" after the borrower defaults on that loan. Md. Code Ann., Com. Law § 12-1021. Creditors who violate CLEC "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Id. § 12-1018(a)(2).

After making some payments, Gardner and Scott defaulted on their loans and GMAC repossessed their cars. GMAC sent the

3

borrowers notices that the cars would be sold at public sales. GMAC sold them for less than the amount owed under the contracts and issued post-sale notices explaining that deficiency.

Gardner and Scott filed separate class action complaints against GMAC, alleging counts for (1) CLEC violations; (2) breach of contract; (3) declaratory and injunctive relief; (4) restitution/unjust enrichment; and (5) violation of Maryland's Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 et seq. The complaints allege that GMAC's pre-sale notices mischaracterized the sales as public, when in fact they were private, due to a $1,000 refundable cash entrance fee required to view the sale. They further contend that, because of that mischaracterization, GMAC's post-sale notices lacked certain statutorily required disclosures for private sales. See Md. Code Ann., Com. Law § 12-1021(j)(2).

The district court found that the sales were public and granted summary judgment to GMAC on that basis. On appeal, we certified the question to the Court of Appeals of Maryland, which held that the sales were private. Gardner v. Ally Fin. Inc., 61 A.3d 817, 828 (Md. 2013). We therefore reversed the district court's judgment and remanded the cases. Gardner v. Ally Fin. Inc., 514 F. App'x 378, 379 (4th Cir. 2013).

On remand, the district court again granted summary judgment to GMAC. This time, the court reasoned that (1)

4

neither Gardner nor Scott had sustained any damages under CLEC because, based on this court's decision in Bediako v. American Honda Finance Corp., 537 F. App'x 183 (4th Cir. 2013), an unpaid principal balance remained on their loans; and (2) GMAC had, in a binding judicial admission, abandoned any claim for deficiency judgments against them. Scott v. Nuvell Fin. Servs., Nos. JFM-09-3110, JFM-10-1094, 2013 WL 6909518, at *1 (D. Md. Dec. 31, 2013). Gardner and Scott appeal, contending that those rulings are in error and raising other issues. We review de novo a district court's order granting summary judgment. Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA, 575 F.3d 409, 412 (4th Cir. 2009).

II.

Two CLEC provisions are at issue in this appeal. First, CLEC's civil remedies section provides, "Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Md. Code Ann., Com. Law § 12-1018(a)(2). Second, CLEC's repossession section states, "If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be

5

entitled to any deficiency judgment to which he would be entitled under the loan agreement." Id. § 12-1021(k)(4).

## A.

We have previously interpreted Section 12-1018(a)(2)'s plain language as limiting "a debtor's relief under CLEC to any amounts paid in excess of the principal amount of the loan." Bediako, 537 F. App'x at 186. We have also explained that, unlike statutes such as the federal Fair Debt Collection Practices Act, CLEC does not establish a fixed statutory damages award. Id. To add an example from Maryland, a statute prohibiting unwanted commercial email provides for damages "in an amount equal to the greater of $500 or the recipient's actual damages." Md. Code Ann., Com. Law § 14-3003 (emphasis added). The absence of a parallel provision in CLEC is telling.

Gardner and Scott do not say that Bediako was wrongly decided; they instead attempt to distinguish it by claiming that the creditor in Bediako fully complied with CLEC. But our holding in Bediako was premised on the assumption that the creditor violated CLEC: "[E]ven if Bediako has adequately alleged a violation of CLEC's notice provisions, she is unable to state a claim because she has suffered no actual damages that are compensable under CLEC." 537 F. App'x at 188 (emphasis added). Turning that assumption into an actual violation does not alter the damages analysis.

6

Because Gardner and Scott have given us no good reason to depart from Bediako, we will follow it.[1] And like the borrower there, the borrowers here have not paid anything in excess of the principal. In Bediako, we recharacterized all of the borrower's payments during the life of the loan as payments toward principal and then subtracted that total and the sale proceeds from the original principal amount of the loan. Id. at 186 & n.1. Applying that same calculation, Gardner and Scott each still owe roughly $11,000 in principal on their loans.

B.

Despite the fact that neither Gardner nor Scott has paid anything in excess of the principal, they nonetheless insist that they are entitled under CLEC to a refund of (1) the funds they claim GMAC collected after repossessing their cars[2] and (2)

---

[1] Gardner and Scott are correct that the district court mistakenly referred to our unpublished Bediako decision as binding authority, but that alone does not require reversal.

[2] Neither borrower made any payments after repossession. But they contend that GMAC impermissibly credited their accounts with refunds it received from insurance companies after their policies were canceled, instead of forwarding those refunds to Gardner and Scott.
 In their opening brief, Gardner and Scott also argue that GMAC collected funds that it designated on their accounts as "PRIN-PAID," "FIN-PAID," "LC-PAID," and "OTHER PAID." But the undisputed evidence shows that these are internal accounting entries used by GMAC to "zero out" the borrowers' accounts in its active account management system before reloading them into the system for accounts in default. J.A. 597.

7

their payments to GMAC during the life of their loans to cover interest, costs, fees, or other charges. That is not correct.

Gardner and Scott build their first argument on a misreading of two cases from the Court of Appeals of Maryland. They say that GMAC is now "limited to the proceeds of the sale as satisfaction of the debt" because it violated CLEC. Appellants' Br. at 29 (quoting Gardner, 61 A.3d at 823, and citing Patton v. Wells Fargo Fin. Md., Inc., 85 A.3d 167, 181 (Md. 2014)). But the full sentence from Gardner gives important context: "If the debtor can show that the creditor failed to abide by the requirements of CLEC in selling the collateral, the creditor may be barred from a deficiency judgment and limited to the proceeds of the sale as satisfaction of the debt." 61 A.3d at 823 (emphasis added). Contrary to Gardner and Scott's view, the court was merely acknowledging the practical reality that a creditor who violates CLEC will likely be unable to collect anything beyond the proceeds of the sale because CLEC bars violators from obtaining a deficiency judgment. Nowhere does the court's opinion or CLEC itself say that creditors who violate CLEC cannot try to collect the deficiency by means other than a judgment, or apply toward the outstanding principal any funds they receive after the repossession sale.

Gardner and Scott would have us read "judgment" out of Section 12-1021(k)(4) and ignore the fact that Section 12-

8

1018(a)(2) expressly permits creditors who violate CLEC to collect the principal amount of the loan. We decline to do so. See Mid-Atlantic Power Supply Ass'n v. Pub. Serv. Comm'n of Md., 760 A.2d 1087, 1097 (Md. 2000) ("It long has been the law of Maryland and well settled, that statutes are to be read to give meaning to every word used and to do otherwise contravenes this cardinal rule of statutory construction."); Kaczorowski v. Mayor & City Council of Balt., 525 A.2d 628, 631 (Md. 1987) ("[S]tatutes dealing with the same subject matter should, when possible, be read together and harmonized.").

As to the second refund claim, Gardner and Scott's argument relies solely on a decision by the Commissioner of Financial Regulation interpreting Maryland mortgage law. Comm'r of Fin. Regulation v. Ward, No. CFR-FY2010-418 (Nov. 26, 2013), aff'd, No. C 13-2191 (Md. Cir. Ct. Feb. 23, 2015). Similar to CLEC Section 12-1018(a)(2), violators of the Maryland Mortgage Lender Law "may collect only the principal amount of the loan and may not collect any interest, costs, finder's fees, broker fees, or other charges with respect to the loan." Md. Code Ann., Fin. Inst. § 11-523(b). Gardner and Scott posit that because the Commissioner in Ward awarded a reimbursement of all amounts collected other than principal, CLEC commands the same result.

We are unpersuaded. Ward is easily distinguishable. The lender there violated Maryland mortgage law at the time the loan

9

was originated by operating without a license. <u>Ward</u>, No. CFR-FY2010-418, at 13; J.A. 626. As a result, the lender collected the reimbursed interest, etc. <u>after</u> the violation. Here, by contrast, GMAC's pre-repossession collection of interest, etc. occurred <u>before</u> any violation. This difference in timing renders <u>Ward</u> inapposite.[3]

---

[3] We deny Gardner and Scott's May 2014 motion to certify a question to the Court of Appeals of Maryland because that motion is based entirely on the purported conflict between <u>Bediako</u> and <u>Ward</u>.

In two Federal Rule of Appellate Procedure 28(j) letters, Gardner and Scott add that <u>Bediako</u> conflicts with orders of the Circuit Court for Anne Arundel County, Maryland, denying a creditor's motion for summary judgment and granting the borrower's motion for class certification. <u>See</u> <u>Patton v. Wells Fargo Bank NA</u>, No. 02-C-10-149844, (Md. Cir. Ct. Apr. 24, 2015); <u>Patton</u>, No. 02-C-10-149844 (Md. Cir. Ct. June 18, 2015). Neither order, however, provides any reasoning on the issue before us.

In a third Rule 28(j) letter, Gardner and Scott press another purported conflict between <u>Bediako</u> and <u>Len Stoler, Inc. v. Wisner</u>, No. 0490, 2015 WL 3421134 (Md. Ct. Spec. App. May 28, 2015). In <u>Wisner</u>, the creditor argued that the borrower lacked standing because even if the creditor had improperly retained part of the excise tax in violation of CLEC, it should have sent the retained amount to the State. As a result, the borrower sustained no injury. The court rejected that argument by simply declaring that if a violation occurred, the borrower "would be entitled to penalties proscribed by CLEC." <u>Len Stoler, Inc.</u>, 2015 WL 3421134, at *11. However, the court did not analyze CLEC's penalties provisions and gave no explanation as to why the borrower would be entitled to those penalties. Moreover, the creditor never raised the argument that GMAC has made before us based on <u>Bediako</u> and CLEC Section 12-1018(a)(2).

III.

Gardner and Scott next argue that the district court erred in denying their claim for declaratory and injunctive relief. We find no error.

First, the borrowers contend that the district court erroneously found that no case or controversy existed as to their claim for a declaratory judgment and an injunction barring GMAC from seeking a deficiency judgment against them.[4] To Gardner and Scott, "GMAC's claim that it is abandoning deficiency judgments is not the same as a declaratory judgment in Plaintiffs' favor" because they could only rely on the latter if "GMAC, or one of its debt collectors, resumed dunning them." Appellants' Br. at 27. However, we agree with the district court that, because GMAC expressly abandoned any claim for deficiency judgments against Gardner and Scott, there is no actual controversy. See Bediako, 537 F. App'x at 187-88.[5]

---

[4] We read the district court's order together with its accompanying memorandum as dismissing this particular claim, rather than entering judgment in favor of GMAC. The district court ruled that no case or controversy existed as to the deficiency judgment issue. That, of course, means it lacked subject matter jurisdiction. S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, No. 14-1796, 2015 WL 3757640, at *6 (4th Cir. June 17, 2015) ("When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.").

[5] Scott contends that because his case was removed from state court, it must now be remanded. See 28 U.S.C. § 1447(c) (Continued)

11

Second, Gardner and Scott posit that they are entitled to a declaratory judgment and an injunction barring GMAC from pursuing the deficiency balance on their loans, even through out-of-court debt collection methods. But there is no basis in CLEC for this claim. CLEC specifically bars violators from seeking a "deficiency judgment." Md. Code Ann., Com. Law § 12-1021(k)(4) (emphasis added). Once again, we decline to read that word out of the statute.

Lastly, Gardner and Scott argue that the district court should have awarded them a declaratory judgment and an injunction barring GMAC from collecting interest, costs, fees, or other charges on their loans in the future. We find that CLEC does not permit such relief to borrowers who allege a violation of the repossession notice requirements. A comparison of CLEC Sections 12-1007 and 12-1021 illustrates why. The

---

("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). But the Supreme Court has all but rejected that interpretation of § 1447(c). Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 392 (1998) ("An ordinary reading of the language indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case."). The Court skeptically acknowledged another possible reading--that the statute requires remand of the individual claim over which the court lacks jurisdiction. Id. We agree that the first interpretation is a better reading of the statute and therefore hold that § 1447(c)'s mandate applies only when a district court lacks subject matter jurisdiction over an entire case.

12

legislature specifically provided that a violation of Section 12-1007, which covers insurance, entitles the borrower to "[a]n injunction to prohibit the credit grantor who has engaged or is engaging in the violation from continuing or engaging in the violation." Md. Code Ann., Com. Law § 12-1007(f)(3)(i). In CLEC Section 12-1021, covering repossession, the legislature did not authorize similar relief. Instead, Section 12-1021 simply states that a violation of its provisions means that "the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." Id. § 12-1021(k)(4).

## IV.

We turn now to Gardner and Scott's claims for breach of contract, restitution/unjust enrichment, and violations of Maryland's Consumer Protection Act. None succeed.

### A.

Gardner and Scott contend that, regardless of their lack of actual damages under CLEC, they have a claim for nominal damages for breach of contract under Maryland law. See Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001) ("[I]t is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages."). Here, though, the borrowers' sole basis for a

breach-of-contract claim is that GMAC violated CLEC. To allow them to pursue nominal damages by asserting a stand-alone breach-of-contract claim would effectively render CLEC's requirement that a borrower suffer actual damages a nullity. This is so because the only way for CLEC to govern a dispute is for the creditor to specifically elect it in the contract. Md. Code Ann., Com. Law § 12-1013.1(a). We do not think that Maryland's highest court would countenance such a result, and neither shall we.[6]

### B.

Gardner and Scott also argue that the district court erred in granting summary judgment to GMAC on their claims for restitution/unjust enrichment and under Maryland's Consumer Protection Act. We disagree.

On the restitution/unjust enrichment claim, the borrowers' entire argument is that they "are entitled to actual damages in restitution and unjust enrichment for the amounts unlawfully collected on their deficiency balances." Appellants' Br. at 34. But GMAC has not collected anything "unlawfully" because it has

---

[6] After we heard oral argument, Gardner and Scott filed a motion to certify the question about the availability of nominal damages to the Court of Appeals of Maryland. We decline to burden that court with a request to rule on what amounts to a claim for a dollar or less. See Brown v. Smith, 920 A.2d 18, 30 (Md. Ct. Spec. App. 2007) (noting that Maryland courts typically award nominal damages from one cent to one dollar).

14

yet to recoup the full principal amount of the loan, and has not collected anything since it sent the repossession notices.

Turning to the borrowers' claim under Maryland's Consumer Protection Act, that statute prohibits "any unfair or deceptive trade practice" in, among other things, the "extension of consumer credit" and the "collection of consumer debts." Md. Code Ann, Com. Law § 13-303(4)-(5). An unfair or deceptive trade practice includes a "[f]alse . . . or misleading . . . written statement . . . which has the capacity, tendency, or effect of deceiving or misleading consumers" and the "[f]ailure to state a material fact if the failure deceives or tends to deceive." Id. § 13-301(1), (3). The Act allows "any person [to] bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the Act]." Id. § 13-408(a).

"Maryland law requires [Consumer Protection Act] claimants to show 'they were actually injured by [the defendant's] violation of the [Act].'" Polek v. J.P. Morgan Chase Bank, N.A., 36 A.3d 399, 417 (Md. 2012) (second alteration in original) (quoting DeReggi Constr. Co. v. Mate, 747 A.2d 743, 752 (Md. Ct. Spec. App. 2000)). A "conjectural or potential injury" will not do. Id. at 418.

15

Gardner and Scott contend that the defective repossession notices constitute an unfair and deceptive trade practice. Even assuming this is so, neither has stated a claim.

Scott's sole argument on this point is that he is entitled to the "amounts collected" on his deficiency balance. But GMAC has not collected anything on his loan since sending the repossession notice. Therefore, Scott has not sustained an actual injury or loss.

Gardner adds that she sustained an injury or loss because she traveled to the site listed in the pre-sale notice to view the sale of her car, but was denied entry because she did not have the undisclosed $1,000 refundable cash deposit. However, nowhere in her complaint does Gardner allege that she would not have traveled to the site had the $1,000 deposit requirement been disclosed. Without this causal link, she too has failed to state a claim.

V.

Finally, Gardner and Scott challenge the district court's denial of their motion under Rule 23(d)(1)(B) of the Federal Rules of Civil Procedure for notice to putative class members. We review that decision for abuse of discretion. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-103 (1981) (applying abuse-of-discretion review to a district court's Rule 23(d) order

16

restricting the ability of the named plaintiffs and their counsel to communicate with potential class members without advance judicial approval); Cruz v. Am. Airlines, Inc., 356 F.3d 320, 328 (D.C. Cir. 2004) (reviewing for abuse of discretion the "district court's decision not to order notice to [putative] class [members]").

Rule 23(d)(1)(B) states, "In conducting an action under this rule, the court may issue orders that: . . . require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members . . . ." Assuming for the sake of argument, as the district court did, that this rule permits notice to putative class members before a class has been certified, we find no abuse of discretion in the district court's refusal to give notice.

In a previous case discussing notice to putative class members after the named plaintiffs agree to a settlement, we observed that "unlike the situation in a certified class action, a 'pre-certification dismissal does not legally bind absent class members,' and, before certification, the absent putative class member has at best a mere 'reliance interest,' the strength of which will vary with the facts of the particular case." Shelton v. Pargo, Inc., 582 F.2d 1298, 1314-15 (4th Cir. 1978) (quoting Magana v. Platzer Shipyard, Inc., 74 F.R.D. 61, 69 (S.D. Tex. 1977)). Gardner and Scott have not demonstrated

17

that the reliance interest of putative class members in their case is so compelling that the district court's denial of notice constituted an abuse of its discretion.

VI.

For the reasons given, the district court's judgment is

AFFIRMED.

18